Lonnie SANDUSKY, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 1637.

United States District Court
W. D. Arkansas,
Fort Smith Division.

Nov. 8, 1962.

4. See Edward B. Marks Music Corp. v. Continental Record Co., 2 Cir., 222 F.2d 488.

Jeptha A. Evans, Booneville, Ark., for plaintiff.

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for defendant.

**JOHN E. MILLER, Chief Judge.**

This is an action by the plaintiff, Lonnie Sandusky, to review a final decision of the defendant Secretary, denying the plaintiff's application for old-age insurance benefits as authorized by the Social Security Act, as amended, 42 U.S.C.A. §§ 402, 413, and 414 (1961 Supp.). This court has jurisdiction of the action pursuant to Sec. 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g). The applicable section of the statute provides:

"* * * The court shall have power to enter, upon the pleadings and transcript of the record, a judgment, affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

On May 31, 1960, plaintiff filed his application for old-age insurance benefits. The application was subsequently denied on the ground that plaintiff was not fully insured, that is, the Act (Sec. 414) required that he have 13 quarters of coverage, or to have quarters of coverage in all but four calendar quarters after 1954 and before the quarter in which he reached retirement age, it having been shown that the plaintiff had only three quarters of coverage at that time. The plaintiff thereafter requested a reconsideration of said denial, and upon reconsideration the Bureau of Old-Age and Survivors Insurance affirmed the denial of the application.

The reconsideration determination reflected that at that time the plaintiff had been credited with an additional three quarters of coverage, giving him a total of six quarters which was still not enough to grant the benefits he sought under his original application.

The plaintiff thereafter requested a hearing before a hearing examiner, and the hearing was held at the Arkansas State Tuberculosis Sanatorium on August 21, 1961.

It may be noted that between the time plaintiff filed his application on May 31, 1960, and the time of his hearing in August 1961, the Social Security Act, Sec. 214, had been amended twice, each amendment lessening the number of quarters of coverage necessary in order for an individual to be fully insured (see Sec. 204(a) of Public Law 86–778, 74 Stat. 948, and 42 U.S.C.A. § 414 (1961 Supp.)). By the 1960 amendment the plaintiff would have been eligible for benefits with eight quarters of coverage instead of 13 quarters required by the Act at the time his application was filed, and by the 1961 amendment he was eli-

gible with only six quarters of coverage, which by this time he had credited to his account. Since the passage of the 1961 amendment, under which the plaintiff became eligible for old-age insurance benefits with only six quarters of coverage, he applied for and was granted benefits of $40.00 per month effective August 1961.

At the time plaintiff's hearing came on before the hearing examiner, the only question to be decided was whether or not plaintiff had the 13 quarters of coverage required by the Act at the time his application had been filed.

However, since the 1960 amendment, as stated above, would have made plaintiff eligible for benefits if he could show he had eight quarters of coverage (and he contended he had that many), the hearing examiner, under the authority granted to him by Social Security Regulations, 20 C.F.R. 404.924, extended the scope of the hearing in order to determine if plaintiff had more than the six quarters of coverage which had been granted to him. Resolution of this question would not only determine his rights as of the time of his original application, but would also be determinative of his rights under the 1960 amendment and thus prevent the necessity for a later appeal by plaintiff on the issue of his eligibility under the 1960 amendment.

The hearing examiner took testimony from the plaintiff and received documentary evidence. He considered the entire case de novo and rendered a decision on August 30, 1961, finding that "the evidence is insufficient to establish that claimant is entitled to quarters of coverage for social security purposes in addition to the six quarters with which he has heretofore been credited." Plaintiff's application was accordingly denied.

Thereafter the plaintiff requested the Appeals Council to review the hearing examiner's decision, and on January 3, 1962, the Appeals Council denied plaintiff's request for review. The decision of the hearing examiner therefore became the final decision of the defendant Secretary.

Plaintiff filed the instant action in this court on March 5, 1962, and in due time the defendant filed his answer together with a certified copy of the transcript of the record, including the evidence upon which the findings and decisions complained of herein are based.

On October 9, 1962, the court wrote the attorney for the plaintiff, after having advised him in several prior communications to submit a brief in support of the plaintiff's contentions, in which was contained the following statement:

> "This court is not disposed to enter an order dismissing this appeal for lack of prosecution, or affirming the decision of the Secretary of Health, Education and Welfare upon its own determination; therefore claimant has until October 29, 1962, in which to submit a brief on the merits as reflected by the transcript along with such additional documentary evidence as the claimant sees fit to submit in support of his contention that he is entitled to a judgment based upon eight quarters. However, if claimant does not see fit to submit such material within the above date, this court will make such summary disposition of the above styled case as is indicated by the state of the record and transcript at that time."

To date no such brief has been submitted by the plaintiff.

On October 29, 1962, the defendant filed his motion for summary judgment on the basis that there is no issue of fact and the defendant is entitled to judgment as a matter of law, and a brief has been received from the defendant in support of his contentions and has been considered by the court.

The pertinent facts in this case are not in dispute. The plaintiff was born November 13, 1892. His occupation has

been filing saws in connection with the lumber industry. The quarters for which plaintiff has been credited with coverage are as follows:

For the two quarters ending September 30, 1944, and December 31, 1944, coverage was established by reason of wages paid by Chess & Wymond Co., Inc.; for the quarter ending June 30, 1948, coverage was established by reason of wages paid by Rosedale Lumber & Mfg. Co., Inc., and A. Ziff & Sons Co.; for the quarter ending December 31, 1959, coverage was established by reason of wages paid by W. L. Bynum Stave Co.; and for the two quarters ending March 31, 1960, and June 30, 1960, coverage was established by reason of wages paid by W. H. Hardcastle.

Wages were also paid plaintiff for the quarters ending September 30, 1948, and September 30, 1959, but these payments amounted to less than $50.00 and the plaintiff was not credited with coverage pursuant to the provisions of 42 U.S.C.A. § 413, as amended.

A Ziff & Sons Co. reported wages paid to the plaintiff in the quarter ending June 30, 1948, as totaling $912.39. Both plaintiff and the Bureau have contacted this company in an effort to ascertain whether or not plaintiff was paid wages during the first calendar quarter of the year 1948 which would entitle plaintiff to coverage for that quarter. However, all the records of A. Ziff & Sons Co. had been destroyed in a fire several years ago, and there was no personal recollection by the officers of this company concerning the periods that they had employed the plaintiff or the periods that he was paid wages by that company. Plaintiff's employment during which the second disputed quarter arose was with the Bynum Stave Company. Plaintiff started working for this company on Friday, September 25, 1959, and after working four hours on Saturday, September 26, 1959, he was paid $18.75 for the portion of the week worked. Plaintiff then resumed work with Bynum on Monday, September 28, and continued in that employment through Friday, October 2, 1959. He was paid the sum of $62.50 for the work week which terminated on October 2, since he was engaged by Bynum to work by the week which pays all of its employees on the last day of any given work week.

The only issue before the court upon the record is whether there is substantial evidence in the record to support the decision of the Secretary that the plaintiff failed to establish that he is entitled to quarters of coverage in addition to the six quarters of coverage now credited to his Social Security account number.

▬▬▬ The burden of proof is upon the plaintiff. Not only are the findings of fact made by the hearing examiner, if supported by substantial evidence, conclusive, but a majority of courts also extend the finality of the hearing examiner's findings to inferences and conclusions which he draws from the evidence if there is substantial basis for the conclusion. The hearing examiner's conclusions of law, however, are not binding upon the court, although they are entitled to great weight. In reviewing the decision of the hearing examiner, this court must not abdicate its conventional function. Blanscet v. Ribicoff (W.D.Ark.1962), 201 F.Supp. 257; Morris v. Ribicoff (W.D.Ark.1961), 194 F.Supp. 841; Harmon v. Ribicoff (W.D.Ark.1961), 192 F.Supp. 743. The court's function in a review of this nature was succinctly summarized in Lewis v. Flemming, 176 F.Supp. 872, at page 874 (E.D.Ark.1959), when the court said:

"In an action of this kind, judicial review should go no further than to determine whether the findings made by the administrative fact finder are supported by substantial evidence and whether applicable principles of law have been correctly applied to the facts. Arbitrary or capricious action must be set aside, and, of course, a finding or conclusion based upon an errone-

ous view of the law cannot be sustained."

The meaning of the term "substantial evidence" and the application of that term by the court is, of course, of paramount importance in a determination of this case. The meaning and application of the "substantial evidence" test in Social Security cases have been subject to discussion in several recent cases.

■ In Wray v. Flemming (W.D.Ark. 1960), 181 F.Supp. 783, this court adopted the definition of substantial evidence as found in 4 Davis, Treatise on Administrative Law, Sec. 29.02, at page 118 as follows:

"In recent decades the principal guide to the meaning of substantial evidence has been a Supreme Court statement written by Chief Justice Hughes: 'Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [Consolidated Edison Co. [of New York] v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).] A later statement clarifies further: Substantial evidence 'means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred. * * * [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939).]"

See, also, Blanscett v. Ribicoff, supra; Morris v. Ribicoff, supra; Harmon v. Ribicoff, supra.

Although the plaintiff in his original application contended that he was entitled to 13 quarters of coverage, there has been no evidence to indicate that plaintiff ever attained this amount of coverage. In fact, the plaintiff has never even contended that he had over eight quarters of coverage at any time. Therefore, it must be concluded that the plaintiff did not have the coverage necessary for receiving old-age insurance benefits at any time the law required him to have 13 quarters, that is, at any time before the passage of the 1960 amendment which would have made him eligible with eight quarters of coverage effective for the months after September 1960.

If the plaintiff had been found eligible under the 1960 amendment, he would have begun drawing benefits beginning with the month of October 1960. By virtue of the 1961 amendment he actually started drawing benefits beginning with the month of August 1961. Therefore the only remaining question is as to his eligibility for benefits during the ten months between September 1960 and August 1961.

In this connection, the Social Security Act, as amended, 42 U.S.C.A. § 413(a)(2), (1961 Supp.), provides that the term "quarters of coverage" means a quarter in which the individual has been paid $50 or more in wages. The records of the defendant set out the amounts of wages that the plaintiff's employers have reported as having been paid to him, and these records reflect that the plaintiff had been credited with wages under the Social Security Act, as follows:

| Quarter Ending | Amount of Wages |
| --- | --- |
| Sept. 30, 1944 | $200.00 |
| Dec. 31, 1944 | 400.00 |
| June 30, 1948 | 971.74 |
| Sept. 30, 1948 | 40.77 |
| Sept. 30, 1949 | 18.75 |
| Dec. 31, 1959 | 312.50 |
| March 31, 1960 | 100.00 |
| June 30, 1960 | 300.00 |

The evidentiary effect of the Secretary's records is stated in 42 U.S.C.A. § 405(c)(3), as follows:

"The Secretary's records shall be evidence for the purpose of proceedings before the Secretary or any

court of the amounts of wages paid to, and self-employment income derived by, an individual and of the periods in which such wages were paid and such income was derived. The absence of an entry in such records as to wages alleged to have been paid to, or as to self-employment income alleged to have been derived by, an individual in any period shall be evidence that no such alleged wages were paid to, or that no such alleged income was derived by, such individual during such period."

See, 20 C.F.R., Sec. 404.804 (1961 Supp.).

In view of the uncontroverted facts as contained in the Secretary's records and the law as stated in the above quoted statutes, it is obvious that plaintiff's wage record for Social Security purposes reflects that he is entitled to only six quarters of coverage. Plaintiff maintains, however, that he is entitled to two additional quarters of coverage—the quarter ending March 31, 1948, and for that ending September 30, 1959.

Although the records maintained by the Secretary reflect that the plaintiff was paid $912.39 by A. Ziff & Sons Co. in the quarter ending June 30, 1948, for which he was given a quarter of coverage for that quarter, plaintiff, however, maintains in effect that he was paid $71.25 per week for this work and that he went to work for the company in early March 1948 and continued working for it until about the middle of June 1948. It is plaintiff's contention that he could not have worked over nine or ten weeks for the Ziff Company in the quarter ending in June 1948 due to the fact that he was off about two weeks between jobs and worked for another company for one week. Therefore, by calculation and deduction, he concludes that he must have made approximately $200 in March which would give him an additional quarter of coverage.

Plaintiff, however, has been unable to present any corroborating evidence, ei-

ther as to the period he worked for this company, the hours he worked, his rate of pay or the total amount he earned in March, if any. Even though the burden was on plaintiff to prove his own claim, the record reflects that the Bureau of Old-Age and Survivors Insurance employees have made great efforts to verify details of plaintiff's employment with this company, but have been unable to do so.

Thus, despite all efforts by plaintiff and despite efforts by personnel of the Bureau, the record presents a sharp conflict between plaintiff's contentions and the information furnished by the Secretary's records. There can be no doubt that the hearing examiner, as the trier of fact, was entitled to resolve this conflict. Butler v. Folsom (W.D.Ark.1958), 167 F.Supp. 684.

The hearing examiner in his decision made the following statement:

"With respect to coverage gained by claimant by virtue of his employment with A. Ziff and Sons Company in the year 1948 the record reveals wages paid only during the quarter ending June 30, 1948. It may be true, as claimant testifies, that at the rate he was paid he could not possibly have earned the sum of $912.39 in his employment with A. Ziff and Sons Company in any one quarter. However, the Administrator's records, which are based upon payroll information supplied by the employer, credit claimant with wages paid by A. Ziff and Sons Company only in the quarter ending June 30, 1948. It may be that a portion of the amount so paid claimant was earned in the quarter ending March 31, 1948, but was not paid until the next quarter. After all this is precisely the situation with respect to claimant's wages with Bynum Stave Company in the year 1959. Nevertheless, in any event the oldest, most authentic evidence that is now of record is to the effect that claimant was paid wages

for which he is entitled to credit for social security purposes while working for A. Ziff and Sons Company only for the second quarter of the year 1948. Claimant's present recollection, unsupported by corroborating evidence, would not appear to constitute sufficient evidence to bring about a revision of the Administrator's records. Section 205 of the Social Security Act, as amended, very clearly states that the Administrator's records shall be evidence of wages paid as well as for the periods for which those wages were paid. The self-serving declaration of claimant is an untenable reason for disregarding, or revising, the Administrator's records pertaining to credit claimant should be allowed by reason of employment with A. Ziff and Sons Company."

It is also plaintiff's contention that he should be given a quarter of coverage for the quarter ending September 30, 1959, since he earned $50 in that quarter even though his wages were not paid until the next quarter. To sustain this allegation he advances the argument that since he had earnings on September 25, 26, 28, 29 and 30, which netted earnings of more than $50 and that he could have demanded that Bynum Stave Company pay him at the end of each work day, that this would constitute payment during a quarter sufficient to qualify it as a quarter of coverage within the statutory provisions. However, plaintiff readily admits that he was engaged by Bynum to work by the week and that he was paid at the end of the work week in question, which fell on October 2, 1959.

The hearing examiner in his decision overcame this argument in the following statement:

"As we have heretofore seen section 213 of the Social Security Act, as amended, defines the term 'quarter of coverage.' In enacting this particular provision recognition must have been given to the fact that chaos would result if the law did not provide a uniform method for gaining quarters of coverage. The method enacted makes the term 'quarter of coverage' hinge upon the quarter in which the individual has been paid rather than the quarter during which the individual earned the wages paid. * * * Claimant would, for coverage, purposes, make an apportionment based upon earnings rather than upon the date of payment as called for in the Act. If claimant should prevail in this argument he would establish entitlement to a quarter of coverage while working for the Bynum Stave Company in the quarter ending September 30, 1959. However, the workweek which ended October 2, 1959, included Monday, September 28, through Wednesday, September 30, 1959. Inasmuch as claimant was paid by Bynum Stave Company by the week it follows that wages earned by claimant on September 28 through September 30 were properly paid on October 2, 1959. The wages having thus been paid in the last quarter of the year 1959, and having been paid according to the contract of employment, it follows that claimant was properly credited with a quarter of coverage for the last quarter of the year 1959 by reason of wages paid claimant by the Bynum Stave Company."

 Therefore, in light of the undisputed facts that have been developed in the record and the applicable law, this court is of the opinion that the evidence is insufficient to establish that the plaintiff, Lonnie Sandusky, is entitled to quarters of coverage for Social Security purposes in addition to the six quarters with which he has heretofore been credited. A reading of the entire record convinces the court that the findings and inferences of the Secretary are supported by substantial evidence.

Therefore, an order is being entered today granting defendant's motion for summary judgment and dismissing the plaintiff's complaint.